# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT NAMER; IAR COMPANY; BUSINESS MANAGEMENT INFORMATION SYSTEM, INC.; and AMERICA ACADEMY OF POOL DESIGNERS, INC., <br><br> Plaintiffs, <br> v. <br> BANK OF AMERICA, N.A., <br><br> Defendant. | CASE NO. 16cv3024 JM(WVG) <br><br> ORDER GRANTING MOTION TO DISMISS; GRANTING LEAVE TO AMEND |

Defendant Bank of America, N.A. ("BANA") moves to dismiss the First Amended Complaint ("FAC") for failure to state a claim. Plaintiffs Robert Namer, IAR Company, Business Management Information System, Inc., and America Academy of Pool Designers, Inc. oppose the motion. Pursuant to Local Rule 7.1(d)(1), the court finds the matters presented appropriate for resolution without oral argument. For the reasons set forth below, the court grants the motion to dismiss the claims for negligence and aiding and abetting conversion with prejudice, and grants the motion to dismiss the claims for breach of contract, aiding and abetting breach of fiduciary duty and breach of fiduciary duty with 14 days leave to amend from the date of entry of this order.

## BACKGROUND

The FAC, filed on January 23, 2017, alleges five claims for relief: (1) breach of contract; (2) negligence; (3) aiding and abetting breach of fiduciary duty; (4) aiding

1  and abetting conversion; and (5) beach of fiduciary duty. Up until December 31, 2014,
2  Robert Namer ("Namer") was the Chairman of the Board, CEO and president of IAR
3  Company ("IAR"), Business Management Information System, Inc. ("BMIS"), and
4  American Academy of Pool Designers, Inc. ("AAPD"), as well as nine other companies
5  referred to as the "Blue Haven Companies" (Blue Haven National Holdings, Inc., Blue
6  Haven National Development, Inc., Blue Haven National Management, Inc., Blue
7  Haven Supplies Direct, Inc., P & A Holding, Inc., Golden State Industries, Inc., BH
8  DVW, Inc., BH Pools of Houston, Inc., and Blue Haven Pools of Louisiana, Inc.).
9  Namer was an alleged officer and director of all the companies. Up until December 31,
10 2014, Namer owned 51% of IAR and Blue Haven National Holdings, Inc. and R'Nelle
11 Lahlou ("Lahlou") 49%. Subsequent to December 31, 2014, Namer owned 100% of
12 IAR; and Lahlou was an officer and director of the Blue Haven Companies. At all
13 relevant times, Plaintiff Namer alleges that he was an authorized signer or signatory to
14 the BANA business accounts held by IAR, BMIS, AAPD, and the Blue Haven
15 Companies.

16      The Alleged Illegal Corporate Takeover

17      Plaintiffs allege that Namer's business partner, Lahlou, on September 4, 2013,
18 "set into motion an illegal corporate takeover" of IAR, BMIS, AAPD, and the Blue
19 Haven Companies. (FAC ¶47). On September 6, 2013, Lahlou "put the rest of her
20 takeover plan into full effect." (FAC ¶49). Among other things, Namer was removed
21 as an authorized signer on the business accounts. On September 9, 2013, Namer wrote
22 to Jeff Schwartz, a vice president at one of BANA's San Diego branches, to inform him
23 that there "had been a hostile and fraudulent takeover" of the companies and requesting
24 that the accounts be frozen until a court order could be obtained. (FAC ¶52). In
25 response to Namer's letter, "Schwartz assured Namer that his name would not be
26 removed from the subject accounts, and that the dispute with Lahlou was a matter for
27 the courts to decide." (FAC ¶55).

28      Despite the September 9th alleged "assurances" by Schwartz that his signature

authority would not be removed from the accounts, Plaintiffs allege that Namer had been removed from the account on September 6, 2013, thus making Schwartz's statements "misleading and deceptive." (FAC ¶56). Plaintiffs also allege that BANA never provided them with the "opportunity to respond to Lahlou's factual contentions, nor did Namer have a chance to object to his being removed from the subject accounts." (FAC ¶66).

On September 12, 2013, Namer sent BANA a "demand notice requesting immediate restoration of his signing power, access to, and ability to borrow funds against the subject accounts." (FAC ¶73). On September 16, 2013, BANA responded by email:

> It appears that you have a legal dispute with the shareholders of the entities which maintain the deposit accounts with the Bank. This kind of dispute is properly resolved by a court; it is neither fair nor proper to demand that the bank investigate the facts, research the law, and issue the equivalent of a judgment.
>
> Therefore, we believe that the best course is to give effect to the written instructions, given to the bank by the owners of the accounts, as to who the signatories should be on the accounts, until such time as the bank might receive a proper court order instructing otherwise.

(FAC ¶75). Namer alleges that "his ability to do business [was] significantly impaired because of restricted cash flow." (FAC ¶100). In light of Lahlou's alleged improper corporate takeover, monies in the IAR, BMIS, and AAPD business accounts were improperly withdrawn.

On September 24, 2013, Namer commenced an action against Lahlou and others, but not BANA, in San Diego Superior Court. On November 22, 2013, Namer commenced another action in the Eastern District of Louisiana against Lahlou, alleging that Lahlou engaged in a plan to strip him of his ownership in a number of companies. (Request for Judicial Notice ("RJN"), Exhs. 1, 2).[1] Namer settled the claims for an undisclosed amount. (FAC ¶115). Namer alleges that he accepted a settlement amount

---

[1] Pursuant to Fed.R.Evid. 201, the court takes judicial notice of the actions filed by Namer.

1  less then he would have because Lahlou had an alleged "financial advantage." Id.

3      Procedural History

4      On July 31, 2015, Plaintiff commenced an action against BANA in the United States District Court for the Eastern District of Louisiana. On March 21, 2016, the district court dismissed the action for lack of personal jurisdiction over BANA.

7      On November 14, 2016, Plaintiffs commenced this action in San Diego Superior Court, and BANA removed the action to this court on December 14, 2016. In response to the first motion to dismiss filed by BANA, Plaintiffs filed the FAC on January 23, 2017.

**DISCUSSION**

**Legal Standards**

Federal Rule of Civil Procedure 12(b)(6) dismissal is proper only in "extraordinary" cases. United States v. Redwood City, 640 F.2d 963, 966 (9th Cir. 1981). Courts should grant 12(b)(6) relief only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990). Courts should dismiss a complaint for failure to state a claim when the factual allegations are insufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (the complaint's allegations must "plausibly suggest[]" that the pleader is entitled to relief); Ashcroft v. Iqbal, 556 U.S. 662 (2009) (under Rule 8(a), well-pleaded facts must do more than permit the court to infer the mere possibility of misconduct). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 678. Thus, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The defect must appear on the face of the complaint itself. Thus, courts may not consider extraneous material in testing its legal adequacy. Levine v. Diamanthuset, Inc., 950 F.2d 1478, 1482 (9th

Cir. 1991). The courts may, however, consider material properly submitted as part of the complaint. Hal Roach Studios, Inc. v. Richard Feiner and Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989).

Finally, courts must construe the complaint in the light most favorable to the plaintiff. Concha v. London, 62 F.3d 1493, 1500 (9th Cir. 1995), cert. dismissed, 116 S. Ct. 1710 (1996). Accordingly, courts must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them. Holden v. Hagopian, 978 F.2d 1115, 1118 (9th Cir. 1992). However, conclusory allegations of law and unwarranted inferences are insufficient to defeat a Rule 12(b)(6) motion. In Re Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996).

**The Breach of Contract Claim**

BANA moves to dismiss the breach of contract claim. To establish a breach of contract, Plaintiffs must show (1) the existence of a contract, (2) performance under the contract, (3) BANA's material breach of the contract, and (4) damages arising from the breach. See Smith v. Royal Mfg. Co., 185 Cal.App.2d 315, 328 (1960); San Mateo Union High Sch. Dist. v. Cnty. of San Mateo, 213 Cal.App. 4th 418, 439 (2013). "The relationship of bank and depositor is founded on contract, which is ordinarily memorialized by a signature card that the depositor signs upon opening the account." Das v. Bank of Am., N.A., 186 Cal.Appp.4th 727, 741 (2010).

At issue here, Plaintiffs allege that BANA breached the Deposit Account Documentation Signature Card ("Deposit Agreements" or "Signature Agreement") by (1) following the "desires" of Lahlou's father, Alvin Eisman; (2) following Lahlou's instructions to remove Namer's signature authority over the business accounts when she was not an authorized signatory to the agreement; and (3) refusing to freeze the accounts. These allegations fail to establish a breach of contract claim. The single allegation of following the "desires" of Alvin Eisman, a non-party, is so nebulous, inconclusive, and non-descript that it fails to provide BANA with sufficient notice to adequately respond to the FAC. The argument that Lahlou was not an authorized

signatory is belied by the signature cards attached to the complaint and properly considered by the court. See Hal Roach Studios, 896 F.2d at 1555. While copies of the signature cards attached to the FAC are not clearly legible, BANA has submitted clean copies of the signature cards reflecting that Lahlou was an authorized signer on the business accounts. (BANA Exhs. A-1 - A-25). Furthermore, the Deposit Agreement, executed on September 4, 2013, reflects that Lahlou was the only authorized signatory to the business accounts at that point in time and that Namer's authority had been deleted pursuant to the terms of the Deposit Agreement. Finally, with respect to Plaintiffs contention that BANA, through Schwartz, breached the Deposit Agreements by providing "assurances" that his instructions to freeze the business accounts and reinstate him as an authorized signer would be honored, do not establish a breach of contract because Plaintiffs fail to identify any provision in the Deposit Agreement that required BANA to freeze an account when one business partner removes the signature authority of another business partner.[2] Absent a duty, there can be no breach as currently alleged.[3]

In sum, the court grants the motion to dismiss the breach of contract claim with leave to amend.[4]

**The Negligence Claim**

California has a two-year statute of limitations for negligence claims. Cal. Code Civ. Pro. §335.1. The alleged wrongful conduct occurred, at the earliest, on September 6, 2013, the date Namer discovered that he had been removed as a signatory

---

[2] The court notes that the written correspondence Namer received from Schwartz on September 16, 2013, clearly refutes Plaintiffs' "assurance" allegations made several days earlier on September 9, 2013.

[3] The court notes that the Deposit Agreements permit BANA to "act on the oral or written instructions of any one signer on the account." (FAC Exh. 5 at 33). After Lahlou's alleged wrongful removal of Namer as an authorized signer on the accounts on September 4, 2013, there does not appear to be any contractual basis permitting BANA to either reinstate Namer or to freeze the accounts. Namer's recourse was to seek judicial intervention, which he did on September 24, 2013.

[4] In light of the existence of the contract, the court may consider an award of attorney's fees and costs to the prevailing party.

to the business accounts. Notwithstanding, Plaintiffs waited over three years to file the complaint on November 14, 2016. The negligence claim is time-barred.

Plaintiffs allege that their claims relate back to the July 31, 2015 filing of their action against BANA in the United States District Court for the Eastern District of Louisiana. Rule 15(c) provides that "[a]n amendment to a pleading relates back to the date of the original pleading." Fed.R.Civ.P. 15(c). Accordingly, an amended complaint relates back to the date of filing the original complaint in the same action. The relation back doctrine of Rule 15(c) simply does not apply to resurrect the separate stale Eastern District of Louisiana case.[5]

Namer also seeks to equitably toll the statute of limitations because he contends that he suffered a stroke in July 2016 and was incapable of commencing any action until November 2016. The court rejects this argument because the negligence claim was time-barred ten months earlier on or about September 6, 2015.

In sum, the court grants the motion to dismiss the negligence claim with prejudice and without leave to amend.

**The Aiding and Abetting Breach of Fiduciary Duty Claim**

"To state a claim for aiding and abetting breach of fiduciary duty under California law, a plaintiff must allege that the defendant: (1) had actual knowledge of the specific primary wrong being committed by the fiduciary; and (2) provided substantial assistance to the fiduciary to accomplish the specific breach of fiduciary duty." In re Mortgage Fund '08 LLC, 527 B.R. 351, 361 (N.D. Cal. 2015) (citing Casey v. U.S. Bank Nat'l Ass'n, 127 Cal.App.4th 1138, 1145–46 (2005)). "California courts have long held that liability for aiding and abetting depends on proof the defendant had actual knowledge of the specific primary wrong the defendant substantially assisted." Casey, 127 Cal.App.4th at 1145; In re First Alliance Mort. Co.,

---

[5] The court notes that had Plaintiffs sought and obtained a venue transfer from the Eastern District of Louisiana to this district then that complaint would have been the original complaint for purposes of Fed.R.Civ.P. 15(c). However, Plaintiffs, as masters of their complaint, chose not to do so and commenced a new, and original, action in San Diego Superior Court.

471 F.3d 977, 933 (9th Cir. 2006) ("[A]iding and abetting liability under California law, as applied by the California state courts, requires a finding of actual knowledge," which "requires more than a vague suspicion of wrongdoing.").

The court concludes that the FAC falls short of stating an aiding and abetting breach of fiduciary duty claim. Lahlou is alleged to have removed Namer as an authorized signer on September 4, 2013. It is well established that a bank is entitled to assume that authorized signers have a legitimate purpose for business transactions, see Chazen v. Centennial Bank, 61 Cal.App.4th 532, 537 (1998), and that there is no implied duty of the bank to supervise account activity. Software Design & Application, Ltd. v. Hoefer & Arnett, Inc., 49 Cal.App.4th 472, 481 (1996). BANA, in the ordinary course of business, complied with the request of an authorized signer on the business accounts, and, on September 4, 2013, Namer was removed as an authorized signer. There are simply no allegations to suggest that BANA was even aware or suspected that Lahlou's removal of Namer as an authorized signer on September 4, 2013, was allegedly wrongful, or anything other than a transaction in the ordinary course of business. The court notes the absence of any authority or well-pleaded allegations that the addition and deletion of authorized signers on business accounts is anything but a routine, lawful business practice.

Here, Plaintiffs' boilerplate allegations assert that BANA understood and had "actual knowledge that Lahlou owed fiduciary duties to Plaintiffs" and "consciously and knowingly asssit[ed] Lahlou in carrying out her scheme." (FAC ¶136). Plaintiffs also allege that, not only did Namer send a letter to BANA on September 9, 2013, but he spoke with Schwartz at BANA. Schwartz then allegedly "assured Namer that his name would not be removed from the subject accounts." (FAC ¶55).[6] After Iqbal, such

---

[6] Contrary to the FAC's alleged oral assurances made by Schwartz, the letter provided to Namer on September 16, 2013, acknowledged Namer's dispute with his business partner, Lahlou, and informed him it would follow the written instructions of authorized signers on the business accounts "until such time as the bank might receive a proper court order instructing otherwise." (FAC ¶75). On September 4, 2013, Namer was removed as an authorized signer on the business accounts. In other

"threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." 556 U.S. at 678. Plaintiffs' conclusory allegations to the effect that BANA knew of Lahlou's wrongful conduct at the time of deleting Namer as a signer to the business accounts on September 4, 2013, fails to plausibly establish that BANA had actual knowledge of the alleged wrongful conduct of Lahlou. As there are insufficient allegations that BANA either plausibly knew of Lahlou's alleged wrongful conduct at the time Namer was removed as an authorized signer on September 4, 2013, or provided substantial assistance to Lahlou, Plaintiffs fail to establish an aiding and abetting claim. As noted in Casey, one "can only aid and abet another's tort if the defendant knows what that tort is." Casey, 127 Cal.App.4th at 1146. The bare conclusory allegation that BANA knew of Lahlou's wrongful conduct, in combination with other allegations to the effect that Namer had many contacts with Schwartz in the past, BANA had knowledge that Lahlou was a fiduciary of Plaintiffs, BANA substantially assisted Lahlou in carrying out her scheme, and Schwartz provided "assurances" that the business accounts would be frozen and he would be reinstated as an authorized signer, fail to overcome the presumption that authorized signers on business accounts have a legitimate purpose for each transaction.[7] See Chazen v. Centennial Bank, 61 Cal.App.4th 532, 537 (1998); Cal. Fin. Code § 1451 (when a depositor "has authorized any person to make withdrawals from the account, the bank, in the absence of written notice otherwise, may assume that any check, receipt, or order of withdrawal drawn by such person in the authorized form or manner . . . was drawn for a purpose authorized by the depositor and within the scope of the authority conferred upon such person"). Plaintiffs must set forth sufficient allegations to show that the removal of Namer as an authorized signer on the business accounts

---

words, absent a court order, BANA would not comply with Namer's requests because he was not, at that point in time, an authorized signer on the accounts. The court notes that the written correspondence challenges Plaintiffs' allegation that Schwartz provided "assurances" that the account would be frozen.

[7] The court notes that Plaintiffs fail to identify the basis for their information and beliefs regarding the boilerplate allegations.

falls outside the ordinary course of business. Plaintiffs have failed to do so.

Furthermore, <u>Paskenta Band of Nomlaki Indians v. Crosby</u>, No. 2:15cv00538 MCE(CMK), 2016 WL 1587233 (E.D. Cal. Apr. 20, 2016), supports the court's conclusion that boilerplate and conclusory allegations are insufficient to establish that a commercial bank, operating in the ordinary course of business, had actual knowledge that Lahlou's conduct constituted a breach of fiduciary duty. In <u>Paskenta</u>, the plaintiffs (a band of Nomlaki Indians, the "Tribe") alleged aiding and abetting breach of fiduciary duty and conversion claims against the defendant bank. Plaintiffs alleged that two of its employees, both authorized signers on plaintiffs' bank accounts, misappropriated funds from the business accounts. Plaintiffs also alleged that the defendant bank had actual knowledge of the wrongful conduct, employees assisted the Tribe's employees in making bank withdrawals (some exceeding the amount that required the bank to file reports with the IRS), and continued to permit the tribe's employees to make withdrawals even after the press reported that the employees had been suspended from the tribe and were suspected of stealing millions of dollars from the tribe. The court found that these allegations were insufficient to state an aiding and abetting claim that the bank "had actual knowledge of the [employees'] alleged conversion of tribal assets because of the [employees'] status as authorized signatories on the account." Here, as in <u>Paskenta</u>, the FAC fails to state a claim for aiding and abetting a breach of fiduciary duty.

In sum, the court grants the motion to dismiss the claim for aiding and abetting breach of fiduciary duty with leave to amend.[8]

**The Aiding and Abetting Conversion Claim**

California has a three- year statute of limitations for conversion. Cal. Code Civ.

---

[8] It is unclear whether California's three or four- year statute of limitations would apply under the circumstances of this case.

1  Pro. §338(c).[9] The alleged wrongful conduct occurred on or about September 6, 2013, the date Namer discovered that he had been removed as a signatory to the business accounts. Notwithstanding, Plaintiffs waited over three years to file the complaint on November 14, 2016. The aiding and abetting conversion claim is thus time-barred.[10]

In sum, the court grants the motion to dismiss the aiding and abetting conversion claim with prejudice and without leave amend.

**The Breach of Fiduciary Duty Claim**

"In order to plead a cause of action for breach of fiduciary duty, there must be shown the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach. The absence of any one of these elements is fatal to the cause of action." Pierce v. Lyman 1 Cal.App.4th 1093, 1101 (1991). The relationship between a bank and its depositor is not fiduciary in character. Chazen, 61 Cal.App.4th at 537. Rather, "the relationship of bank and depositor is founded on contract, which is ordinarily memorialized by a signature card that the depositor signs upon opening the account. This contractual relationship does not involve any implied duty to supervise account activity or to inquire into the purpose for which the funds are being used." Id. (internal quotation marks, brackets, and citations omitted).

Plaintiffs contend that a fiduciary relationship was created by the alleged oral statement of Schwartz on September 9, 2013, that resulted in Namer being "assured" that he would not be removed as an authorized signer from the business accounts and the accounts frozen. (FAC ¶145). At the time of the alleged "assurances," the court notes that Namer lacked authority to make any changes to the business accounts because he was not an authorized signer on the business accounts. Furthermore,

---

[9] The statute of limitations for a cause of action for aiding and abetting is generally the same as the underlying tort. See Vaca v. Wachovia Mort. Corp., 198 Cal.App.4th 737, 743-44 (2011).

[10] The court notes that this claim fails on the merits as well. An aiding and abetting conversion claim requires Plaintiffs to allege that BANA intentionally participated with "knowledge of the object to be obtained," something Plaintiffs fail to do. Casey, 127 Cal.App.4th at 1146.

whatever the nature of the alleged "assurances," the September 12, 2013 letter to Namer from Schwartz contradicted those "assurances" and clarified that Namer was not an authorized signer on the business accounts, the accounts would not be frozen at his request, and that the business dispute between Namer and Lahlou was one for the courts to decide. (FAC ¶75).

Plaintiffs' allegation of "assurances" by Schwartz, combined with allegations that Namer "had dealt with Schwartz on many occasions" and trusted and maintained confidence in him, falls far short of establishing a fiduciary relationship. These allegations fail to adequately allege that BANA was duplicitous with Lahlou in her allegedly wrongful scheme to deplete the business accounts, or even that BANA had any knowledge of Lahlou's alleged wrongdoing. The allegations are insufficient to undermine the well-established principle that the "relationship between a bank and its depositor is not fiduciary in character." Das, 186 Cal.App.4th at 740-41. Accordingly, Plaintiffs fail to state a claim for breach of fiduciary duty.

In sum, the court grants the motion to dismiss the claims for negligence and aiding and abetting conversion with prejudice and without leave to amend and grants the motion to dismiss the claims for breach of contract, aiding and abetting breach of fiduciary duty and breach of fiduciary duty with 14 days leave to amend from the date of entry of this order. Plaintiffs are advised that the failure to state a claim in a second amended complaint will likely result in the dismissal of the action with prejudice.

**IT IS SO ORDERED.**

DATED: March 30, 2017

Hon. Jeffrey T. Miller
United States District Judge

cc: All parties