# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| ROBERT NAMER; IAR COMPANY; BUSINESS MANAGEMENT INFORMATION SYSTEM, INC.; and AMERICA ACADEMY OF POOL DESIGNERS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> BANK OF AMERICA, N.A., <br><br> Defendant. | CASE NO. 16cv3024 JM(WVG) <br><br> ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT WITHOUT LEAVE TO AMEND |
|---|---|

Pursuant to Fed.R.Civ.P. 12(b)(6), Defendant Bank of America, N.A. ("BANA") moves to dismiss the Second Amended Complaint ("SAC") for failure to state a claim. Plaintiffs Robert Namer, IAR Company, Business Management Information System, Inc., and America Academy of Pool Designers, Inc. oppose the motion to dismiss the breach of contract claims and the aiding and abetting breach of fiduciary duty claim but not the breach of fiduciary duty claim. Pursuant to Local Rule 7.1(d)(1), the court finds the matters presented appropriate for resolution without oral argument. For the reasons set forth below, the court grants the motion to dismiss the claims for breach of contract, aiding and abetting breach of fiduciary duty, and breach of fiduciary without leave to amend.

## BACKGROUND

The SAC, filed on April 13, 2017, alleges three claims for relief: (1) breach of

contract; (2) aiding and abetting breach of fiduciary duty; and (3) beach of fiduciary duty. Up until December 31, 2014, Robert Namer ("Namer") was the Chairman of the Board, CEO and president of IAR Company ("IAR"), Business Management Information System, Inc. ("BMIS"), and American Academy of Pool Designers, Inc. ("AAPD"), as well as nine other companies referred to as the "Blue Haven Companies" (Blue Haven National Holdings, Inc., Blue Haven National Development, Inc., Blue Haven National Management, Inc., Blue Haven Supplies Direct, Inc., P & A Holding, Inc., Golden State Industries, Inc., BH DVW, Inc., BH Pools of Houston, Inc., and Blue Haven Pools of Louisiana, Inc.). Namer was an alleged officer and director of all the companies. Up until December 31, 2014, Namer owned 51% of IAR and Blue Haven National Holdings, Inc. and R'Nelle Lahlou ("Lahlou") 49%. Subsequent to December 31, 2014, Namer owned 100% of IAR; and Lahlou was an officer and director of the Blue Haven Companies. At all relevant times, Plaintiff Namer alleges that he was an authorized signer or signatory to the BANA business accounts held by IAR, BMIS, AAPD, and the Blue Haven Companies (collectively the "Company Entities").

<u>The Alleged Illegal Corporate Takeover</u>

Plaintiffs allege that Namer's business partner, Lahlou, and her father, Alvin Eisman, on September 4, 2013, "set into motion an illegal corporate takeover" of IAR, BMIS, AAPD, and the Blue Haven Companies. (SAC ¶48). On September 6, 2013, Lahlou "put the rest of her takeover plan into full effect." (SAC ¶50). Among other things, Namer was removed as an authorized signer on the business accounts. On September 9, 2013, Namer wrote to Jeff Schwartz, a vice president at one of BANA's San Diego branches, to inform him that there "had been a hostile and fraudulent takeover" of the companies and requesting that the accounts be frozen until a court order could be obtained. (SAC ¶51). In response to Namer's letter, "Schwartz [verbally] assured Namer that his name would not be removed from the subject accounts, and that the dispute with Lahlou was a matter for the courts to decide." (SAC ¶52).

Despite the September 9th alleged "assurances" by Schwartz that his signature authority would not be removed from the accounts, Plaintiffs allege that Namer had been removed from the Corporate Entities account on September 6, 2013, thus "lulling Namer into a false sense of security and to make Namer think that Namer did not need to take further immediate action to prevent [the accounts] from being pilfered by Eisman and Lahlou." (SAC ¶58).

On September 12, 2013, Namer sent BANA a "demand notice requesting immediate restoration of his signing power, access to, and ability to borrow funds against the subject accounts." (SAC ¶55). On September 16, 2013, BANA responded by email:

> It appears that you have a legal dispute with the shareholders of the entities which maintain the deposit accounts with the Bank. This kind of dispute is properly resolved by a court; it is neither fair nor proper to demand that the bank investigate the facts, research the law, and issue the equivalent of a judgment.
>
> Therefore, we believe that the best course is to give effect to the written instructions, given to the bank by the owners of the accounts, as to who the signatories should be on the accounts, until such time as the bank might receive a proper court order instructing otherwise.

(SAC ¶55). Namer alleges that millions had been depleted from the accounts. (SAC ¶77). In light of Lahlou's alleged improper corporate takeover, monies in the IAR, BMIS, and AAPD business accounts were improperly withdrawn.

On September 24, 2013, Namer commenced an action against Lahlou and others, but not BANA, in San Diego Superior Court. On November 22, 2013, Namer commenced another action in the Eastern District of Louisiana against Lahlou, alleging that Lahlou engaged in a plan to strip him of his ownership in a number of companies. (Request for Judicial Notice ("RJN"), Exhs. 1, 2).[1] Namer settled the claims for an undisclosed amount. (FAC ¶115). Namer alleges that he accepted a settlement amount less then he would have because Lahlou had an alleged "financial advantage." Id.

---

[1] Pursuant to Fed.R.Evid. 201, the court takes judicial notice of the actions filed by Namer.

1      <u>Procedural History</u>

2      On July 31, 2015, Plaintiff commenced an action against BANA in the United
3 States District Court for the Eastern District of Louisiana. On March 21, 2016, the
4 district court dismissed that action for lack of personal jurisdiction.

5      On November 14, 2016, Plaintiffs commenced this action in San Diego Superior
6 Court, and BANA removed the action to this court on December 14, 2016. In response
7 to the first motion to dismiss filed by BANA, Plaintiffs filed the FAC on January 23,
8 2017. On March 30, 2017, the court granted BANA's motion to dismiss the FAC's
9 claims for breach of contract, aiding and abetting breach of fiduciary duty, and breach
10 of fiduciary duty with leave to amend and dismissed the claims for negligence and
11 aiding and abetting conversion with prejudice as time-barred. On June 1, 2017, the
12 court granted Plaintiffs' motion to reconsider the dismissal of the claim for aiding and
13 abetting with prejudice and granted Plaintiffs leave to amend that claim. The court
14 denied the motion to reconsider dismissal of the negligence claim.

15                              **DISCUSSION**

16 **Legal Standards**

17      Federal Rule of Civil Procedure 12(b)(6) dismissal is proper only in
18 "extraordinary" cases. <u>United States v. Redwood City</u>, 640 F.2d 963, 966 (9th Cir.
19 1981). Courts should grant 12(b)(6) relief only where a plaintiff's complaint lacks a
20 "cognizable legal theory" or sufficient facts to support a cognizable legal theory.
21 <u>Balistreri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1990). Courts should
22 dismiss a complaint for failure to state a claim when the factual allegations are
23 insufficient "to raise a right to relief above the speculative level." <u>Bell Atlantic Corp.</u>
24 <u>v. Twombly</u>, 550 U.S. 544, 555 (2007) (the complaint's allegations must "plausibly
25 suggest[]" that the pleader is entitled to relief); <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009)
26 (under Rule 8(a), well-pleaded facts must do more than permit the court to infer the
27 mere possibility of misconduct). "The plausibility standard is not akin to a 'probability
28 requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully." Id. at 678. Thus, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The defect must appear on the face of the complaint itself. Thus, courts may not consider extraneous material in testing its legal adequacy. Levine v. Diamanthuset, Inc., 950 F.2d 1478, 1482 (9th Cir. 1991). The courts may, however, consider material properly submitted as part of the complaint. Hal Roach Studios, Inc. v. Richard Feiner and Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989).

Finally, courts must construe the complaint in the light most favorable to the plaintiff. Concha v. London, 62 F.3d 1493, 1500 (9th Cir. 1995), cert. dismissed, 116 S. Ct. 1710 (1996). Accordingly, courts must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them. Holden v. Hagopian, 978 F.2d 1115, 1118 (9th Cir. 1992). However, conclusory allegations of law and unwarranted inferences are insufficient to defeat a Rule 12(b)(6) motion. In Re Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996).

**The Breach of Contract Claim**

BANA moves to dismiss the breach of contract claim. To establish a breach of contract, Plaintiffs must show (1) the existence of a contract, (2) performance under the contract, (3) BANA's material breach of the contract, and (4) damages arising from the breach. See Smith v. Royal Mfg. Co., 185 Cal.App.2d 315, 328 (1960); San Mateo Union High Sch. Dist. v. Cnty. Of San Mateo, 213 Cal.App. 4th 418, 439 (2013). "The relationship of bank and depositor is founded on contract, which is ordinarily memorialized by a signature card that the depositor signs upon opening the account." Das v. Bank of Am., N.A., 186 Cal.Appp.4th 727, 741 (2010).

At issue here, Plaintiffs allege that BANA breached the contract (consisting of the Deposit Agreement and Disclosures ("Deposit Agreement") and Signature Card) by (1) following the instructions of Lahlou; (2) following the instruction of Lahlou's father, Alvin Eisman, to remove Namer as an authorized signer on the accounts; (3) following Eisman's instructions to prevent Namer from becoming an authorized signer

1 on the accounts; and (4)failing to follow Namer's instructions to add him back on the
2 accounts. (Oppo. at pp. 4:15- 5:7). Like the previous complaints, these allegations fail
3 to establish a breach of contract claim.

4 Upon signing the Signature Cards, Namer and Lahlou agreed that the accounts
5 were "governed by the terms and conditions set forth in the" Deposit Agreement. (SAC
6 Exhs. 1 at 1; 2 at 1; 3 at 1). Among other things, the Deposit Agreement provided that
7 authorized persons on the account could "deposit, withdraw, or exercise control over
8 the funds in [the account]" or "otherwise operate the account." It further states that if
9 the account owner is a corporation, "each person signing the signature card or
10 completing other account opening documents represents and agrees that they . . . are
11 fully authorized to execute all documents or otherwise complete our requirements in
12 their stated capacity." (SAC Exh. 4 at 1-2). An authorized signer on the accounts is
13 authorized to direct "the removal of any account holder or authorized signer." (Id. at
14 29).

15 The exhibits attached to the SAC, properly considered on this motion to dismiss,
16 see Hal Roach Studios, 896 F.2d at1555, show that both Namer and Lahlou were
17 authorized signers on the account-opening Signature Cards and that, on September 4,
18 2013, Lahlou was the only authorized signer, having deleted Namer as an authorized
19 signer. (SAC Exh. 1-3). Pursuant to the terms of the parties' contractual agreements,
20 the removal of Namer by Lahlou as an authorized signer is consistent with the
21 contract's terms and conditions. Accordingly, Plaintiffs fails to show that BANA
22 breached the contract by adhering to the contractual agreement of the parties.

23 The court also rejects Plaintiffs' contention that a breach of contract claim is
24 stated by alleging that Eisman, a non-party, instructed BANA to remove Namer from
25 the corporate accounts. The exhibits to the SAC clearly show that Lahlou, an
26 authorized signer, removed Namer, and not Eisman, pursuant to the agreement between
27 the parties. Id. There are no allegations that Eisman signed or forged Lahlou's
28 signature. Even if Lahlou followed the advice of Eisman (or any other party) in

1 removing Namer from the accounts, the allegations fail to establish a breach of contract
2 between the Company Entities and BANA because Lahlou was authorized to remove
3 Namer as a signer on the accounts.

4 In broad brush, the SAC alleges that Lahlou and Eisman engaged in a scheme to
5 "fraudulent[ly] takeover" the Company Entities and that BANA represented on
6 September 9, 2013 that Namer would not be removed as an authorized signer (even
7 though he had already been removed as an authorized signer on September 4, 2013).
8 (SAC ¶51). While Plaintiffs' allegations may echo a fraud theory, this action is based
9 on contract, not fraud. Moreover, even if Plaintiffs were pursuing fraud, there is no
10 fraud or misrepresentation cause of action alleged in the SAC nor are apparently
11 indispensable parties necessary to a fraud claim joined in this action. Further,
12 consistent with the parties contractual relationship, the correspondence received by
13 Namer from BANA on September 12, 2013, informed him that BANA would comply
14 with the written instructions received from Lahlou, as required by the parties'
15 contractual relationship, and that it would continue to do so "until such time as the bank
16 might receive a proper court order instructing otherwise." (SAC ¶55).[2] Similarly,
17 Plaintiffs allege that BANA "did nothing to verify that Lahlou was authorized to act on
18 behalf of the Customer Companies and knew that neither Eisman nor Lahlou were
19 authorized to remove Namer from those Accounts." (SAC ¶57). The difficulty with
20 this allegation is that the contract documents establish that Lahlou, like Namer, could
21 contractually remove any other authorized signer from the accounts.

22 Plaintiffs contend that "the signature cards do not and cannot conclusively
23 establish that only Lahlou made that request. . . . Obviously, Eisman could have made
24 that request regardless of whether Lahlou's name was on the signature cards." (Oppo.

---

[2] At the time Namer allegedly informed BANA on September 9, 2013, that Lahlouhad engaged in a hostile and fraudulent takeover of the Corporate Entities, (SAC ¶51), Namer was no longer an authorized signer on the accounts and could not be reinstated without breaching the express terms of the contract between BANA and the Corporate Entities. The court also notes that Namer does not allege that he presented BANA with an appropriate corporate resolution or court order authorizing his reinstatement as an authorized signer on the corporate accounts.

at pp. 5:19-6:1). Assuming the truth of the allegation that Eisman, or any person but Lahlou, "could have" made the request to remove Namer as an authorized signer is a theoretical exercise which falls leagues short of plausible allegations warranting relief; nor do such musings sufficiently allege a breach of contract in light of Lahlou's contractual authority to remove Namer from the accounts upon her authorized request. While Plaintiffs repeatedly allege that Lahlou and Eisman schemed to defraud him, these allegations are not relevant to the breach of contract claim against BANA.

Namer also contends that "when [he] opened the accounts" BANA verbally agreed to restrict Lahlou's authority to "writing checks on behalf of the account holders in the event that Namer was not available to do so as a matter of convenience." (SAC ¶99). In other words, BANA allegedly agreed to review and conduct an inquiry into each banking transaction authorized by Lahlou to determine whether "Namer was not available to do so as a matter of convenience." In light of the numerous banking transactions conducted by the Corporate Entities in the ordinary course of business, this allegation, without more, is entirely speculative, conclusory, lacks plausibility and is negated by the documents submitted by the parties bearing on this motion. Essentially, Namer, a sophisticated business person, seeks to impose on BANA the commercially unreasonable duty to make additional inquiry into whether an authorized signer, like Lahlou, was writing the checks because "Namer was not available to do so as a matter of convenience."[3] Nothing in the record before the court, including the SAC's well-pleaded allegations, support this novel theory.

In sum, the court grants the motion to dismiss the breach of contract cause of action. As Plaintiffs have filed three complaints, each fairing no better than earlier iterations, this claim is dismissed with prejudice, and without leave to amend.

---

[3] The parol evidence rule also appears to bar this allegation. The parole evidence rule bars extrinsic evidence of prior or contemporaneous agreements to add to or modify the terms of an integrated written instrument. See Masterson v. Sine, 68 Cal.2d 222 (1968). "The law presumes a written contract supersedes all prior or contemporaneous oral agreements . . . and where the writing is integrated, the presumption cannot be overcome." Warner v. Glendale Adventist Med. Center, 216 Cal.App.3d 1379, 1385 (1989).

**The Aiding and Abetting Breach of Fiduciary Duty Claim**

"To state a claim for aiding and abetting breach of fiduciary duty under California law, a plaintiff must allege that the defendant: (1) had actual knowledge of the specific primary wrong being committed by the fiduciary; and (2) provided substantial assistance to the fiduciary to accomplish the specific breach of fiduciary duty." In re Mortgage Fund '08 LLC, 527 B.R. 351, 361 (N.D. Cal. 2015) (citing Casey v. U.S. Bank Nat'l Ass'n, 127 Cal.App.4th 1138, 1145–46 (2005)). "California courts have long held that liability for aiding and abetting depends on proof the defendant had actual knowledge of the specific primary wrong the defendant substantially assisted." Casey, 127 Cal.App.4th at 1145; In re First Alliance Mort. Co., 471 F.3d 977, 933 (9th Cir. 2006) ("[A]iding and abetting liability under California law, as applied by the California state courts, requires a finding of actual knowledge," which "requires more than a vague suspicion of wrongdoing.").

As with the FAC, the court concludes that the SAC falls short of stating an aiding and abetting breach of fiduciary duty claim. Lahlou is alleged to have removed Namer as an authorized signer on September 4, 2013. It is well established that a bank is entitled to assume that authorized signers have a legitimate purpose for business transactions, see Chazen v. Centennial Bank, 61 Cal.App.4th 532, 537 (1998), and that there is no implied duty of the bank to supervise account activity. Software Design & Application, Ltd. v. Hoefer & Arnett, Inc., 49 Cal.App.4th 472, 481 (1996). BANA, in the ordinary course of business, complied with the request of an authorized signer on the business accounts, and, on September 4, 2013, Namer was removed as an authorized signer by another authorized signer. There are simply no allegations to suggest that BANA was even aware or suspected that Lahlou's removal of Namer as an authorized signer on September 4, 2013, was allegedly wrongful, or anything other than a transaction in the ordinary course of business. The court notes the absence of any authority or well-pleaded allegations that the addition or deletion of an authorized signer on a business account is anything but a routine, lawful business practice.

In large part, Plaintiffs allege that BANA had actual knowledge of the alleged fraudulent conduct of Lahlou and Eisman because (1) Lahlou "had no or virtually no business dealings with BANA" regarding the Company Accounts; (2) Lahlou's request to remove Namer as an authorized signer came "out of the blue;" (3) BANA knew that Namer was the CEO and president of the Company Accounts; (4) BANA received instructions from Eisman; (5) BANA had orally agreed to limit Lahlou's authority to check-writing; (6) BANA knew that neither Eisman nor Lahlou were authorized to remove Namer as an authorized signer; (7) BANA "actively and knowingly assisted Eisman and Lahlou in carrying out their wrongful scheme" by directing the removal of Namer as an authorized signer; (8) Schwartz's alleged verbal representation to Namer on September 9, 2013, contrary to Schwartz's written statement on September 12, 2013, that he would not be removed as an authorized signer; (9) BANA "violated its own [unidentified] policies;" and (10) BANA followed the instructions of Eisman in removing Namer as an authorized signer. (SAC ¶¶107, 108).

These allegations, the court concludes, fall short of adequately alleging that BANA had actual knowledge of Lahlou's alleged fraudulent conduct. While Plaintiffs need not plead actual knowledge with particularity, see Fed.R.Civ.P. 9(b), Plaintiffs must set forth sufficient allegations to establish BANA had reason to believe that Lahlou was engaged in fraudulent activity. The bare conclusory allegation that BANA knew of Lahlou's wrongful conduct, in combination with the other allegations, fails to overcome the presumption that authorized signers on business accounts have a legitimate purpose for each transaction. See Chazen, 61 Cal.App.4th at 537; Cal. Fin. Code § 1451 (when a depositor "has authorized any person to make withdrawals from the account, the bank, in the absence of written notice otherwise, may assume that any check, receipt, or order of withdrawal drawn by such person in the authorized form or manner . . . was drawn for a purpose authorized by the depositor and within the scope of the authority conferred upon such person"). Such allegations fail the Twombly and Iqbal mandate of plausible factual allegations suggesting that one is entitled to relief.

Paskenta Band of Nomlaki Indians v. Crosby, No. 2:15cv00538 MCE(CMK), 2016 WL 1587233 (E.D. Cal. Apr. 20, 2016), further supports the court's conclusion that the present allegations are insufficient to establish that a commercial bank, such as BANA, operating in the ordinary course of business, had actual knowledge that Lahlou's conduct constituted a breach of fiduciary duty. In Paskenta, the plaintiffs (a band of Nomlaki Indians, the "Tribe") alleged aiding and abetting breach of fiduciary duty and conversion claims against the defendant bank. Plaintiffs alleged that two of its employees, both authorized signers on plaintiffs' bank accounts, misappropriated funds from the business accounts. Plaintiffs also alleged that the defendant bank had actual knowledge of the wrongful conduct, employees assisted the Tribe's employees in making bank withdrawals (some exceeding the amount that required the bank to file reports with the IRS), and continued to permit the tribe's employees to make withdrawals even after the press reported that the employees had been suspended from the tribe and were suspected of stealing millions of dollars from the tribe. The court found that these allegations were insufficient to state an aiding and abetting claim that the bank "had actual knowledge of the [employees'] alleged conversion of tribal assets because of the [employees'] status as authorized signatories on the account." Here, as in Paskenta, the FAC fails to state a claim for aiding and abetting a breach of fiduciary duty.

In sum, the court grants the motion to dismiss the claim for aiding and abetting breach of fiduciary duty. As Plaintiffs have failed to state a claim on three occasions, the court dismisses this claim with prejudice and without leave to amend.

**The Breach of Fiduciary Duty Claim**

"In order to plead a cause of action for breach of fiduciary duty, there must be shown the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach. The absence of any one of these elements is fatal to the cause of action." Pierce v. Lyman 1 Cal.App.4th 1093, 1101 (1991). The relationship between a bank and its depositor is not fiduciary in character. Chazen, 61 Cal.App.4th at 537.

Rather, "the relationship of bank and depositor is founded on contract, which is ordinarily memorialized by a signature card that the depositor signs upon opening the account. This contractual relationship does not involve any implied duty to supervise account activity or to inquire into the purpose for which the funds are being used." Id. (internal quotation marks, brackets, and citations omitted).

Plaintiffs set forth no argument in opposition to dismissal of this claim. Accordingly, the court grants the motion based upon Plaintiffs failure to oppose dismissal of this claims and for the reasons set forth by BANA in its motion and this court's previous order.

In sum, the court grants dismissal of the claims for breach of contract, aiding and abetting breach of fiduciary duty, and breach of fiduciary duty without leave to amend.[4]

**IT IS SO ORDERED.**

DATED:   July 10, 2017

JEFFREY T. MILLER
United States District Judge

cc:    All parties

---

[4] The court notes that BANA's motion to dismiss the aiding and abetting conversion claim is calendared for August 7, 2017.