# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| ROBERT NAMER; IAR COMPANY; BUSINESS MANAGEMENT INFORMATION SYSTEM, INC.; and AMERICA ACADEMY OF POOL DESIGNERS, INC., Plaintiffs, v. BANK OF AMERICA, N.A., Defendant. | CASE NO. 16cv3024 JM(WVG) ORDER DENYING MOTION FOR RECONSIDERATION; GRANTING MOTION TO DISMISS THIRD AMENDED COMPLAINT WITHOUT LEAVE TO AMEND |
|---|---|

Pursuant to Fed.R.Civ.P. 59(e), Plaintiffs Robert Namer, IAR Company, Business Management Information System, Inc., and America Academy of Pool Designers, Inc. move for reconsideration of this court's July 10, 2017 Order Granting Motion to Dismiss Second Amended Complaint Without Leave to Amend ("Order").[1] Pursuant to Fed.R.Civ.P. 12(b)(6), Defendant Bank of America, N.A. ("BANA") moves to dismiss the only remaining claim alleged in the Third Amended Complaint ("TAC"), the aiding and abetting conversion claim. All motions are opposed. Pursuant to Local Rule 7.1(d)(1), the court finds the matters presented appropriate for resolution without oral argument. For the reasons set forth below, the court denies the motion for reconsideration and grants the motion to dismiss the claim for aiding and abetting

---

[1] The court incorporates the Order as if fully set forth herein.

conversion without leave to amend. The Clerk of Court is instructed to close the file.

## BACKGROUND

On March 30, 2017, the court granted BANA's motion to dismiss the claims alleged in the First Amended Complaint: the negligence and aiding and abetting conversion claims were dismissed as time-barred, without leave to amend, and the claims for breach of contract, aiding and abetting breach of fiduciary duty and breach of fiduciary duty were dismissed with leave to amend. The Second Amended Complaint ("SAC"), filed on April 13, 2017, alleged three claims for relief: (1) breach of contract; (2) aiding and abetting breach of fiduciary duty; and (3) beach of fiduciary duty. On July 10, 2017, the court granted the motion to dismiss these claims with prejudice.

On June 1, 2017, the court granted in part and denied in part Plaintiffs' motion for reconsideration of the dismissal with prejudice of the aiding and abetting conversion claims. In light of the representations that Plaintiffs could allege a basis to toll the statute of limitations on the aiding and abetting conversion claim, the court granted leave to amend this claim, but declined to reconsider dismissal of the negligence claim. On June 9, 2017, Plaintiffs filed the TAC asserting the same three claims alleged in the SAC, in addition to the aiding and abetting conversion claim.

### The Motion for Reconsideration

Reconsideration is generally appropriate "if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law. . . . There may also be other, highly unusual circumstances warranting reconsideration." School Dist. No. 1J, Multnomah County, Oregon v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993) (citations omitted); Fed.R.Civ.P. 60(b) and 59(e).

Plaintiffs primarily contend that when, upon reconsideration, the court granted leave to file an amended claim for aiding and abetting conversion, the claims in the SAC were rendered moot and the operative claims replaced by those alleged in the

TAC. This argument is not persuasive for two reasons. First, the court granted leave to amend the claim for aiding and abetting conversion, and not the other claims alleged in the SAC. Second, the claims (breach of contract, aiding and abetting breach of fiduciary duty, and beach of fiduciary duty) and supporting allegations in both complaints are the same. Accordingly, consistent with Fed.R.Civ.P. 1, the court's order dismissing the SAC's claims applies equally to the same claims alleged in the TAC.

In sum, the motion for reconsideration is denied.

**The Aiding and Abetting Conversion Claim**

This court's March 30, 2017 order dismissed the aiding and abetting conversion claim as both time-barred and on the merits. The court concludes that the TAC adequately alleges grounds to toll the three-year statute of limitations. See Cal. Civ.Pro. §338(c). Plaintiffs allege that the statute of limitations was tolled during (1) the period of disability caused by the severity of Namer's stroke; (2) the pursuit of Plaintiffs' claims against BANA in the district court of Louisiana; and (3) the period during which Plaintiffs and BANA pursued purported settlement negotiations. (TAC ¶¶ ). The court now turns to the merits of Plaintiffs' aiding and abetting conversion claim.

A civil cause of action for aiding and abetting "necessarily requires a defendant to reach a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act. A plaintiff's object in asserting such a theory is to hold those who aid and abet in the wrongful act responsible as joint tortfeasors for all damages ensuing from the wrong." Howard v. Superior Court, 2 Cal.App.4th 745, 749 (1992). Liability for aiding and abetting an intentional tort arises if the defendant substantially assists or encourages another party to act, with the knowledge that the other party's conduct constitutes a breach of duty. See Casey v. U.S. Nat. Bank Ass'n, 127 Cal.App.4th 1138, 1144 (2005). "The words 'aid and abet' [] have a well understood meaning, and may fairly be construed to imply an intentional

participation with knowledge of the object to be attained." Lomita Land Water Co. v. 1146 Robinson, 154 Cal. 36, 97 P. 10 (1908).

In Casey, the Court of Appeal explained that "even the 'ordinary business transactions' a bank performs for a customer can satisfy the substantial assistance element of an aiding and abetting claim if the bank actually knew those transactions were assisting the customer in committing a specific tort. Knowledge is the crucial element." Casey, 127 Cal.App.4th at p. 1145. The plaintiff bankruptcy Trustee in Casey sought to impose aiding and abetting liability on several banks by alleging that the banks allowed certain officers and directors of DFJ Fiduciaries to divert more than $36 million in investor funds. The Trustee alleged that the banks allowed the fraudsters to open accounts with invalid tax identification numbers; permitted the fraudsters to remove $6 million from the cash vaults in violation of banking regulations and internal policies; allowed "obviously forged negotiable instruments" to be paid; knew that the DFJ Fiduciaries were engaged in wrongful or illegal conduct, including unauthorized cash withdrawals from the banks; acted with knowledge of the primary wrongdoing and knew that their conduct would assist in accomplishing the wrongful conduct; and ignored the face value of checks by paying sums in excess of such limits. Id. at 1142. The Trustee also alleged, in conclusory fashion, that "each [bank] acted with knowledge of the primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct." Id. at 1153. In short, the Trustee alleged that the banks "knew something fishy was going on" because the DFJ Fiduciaries opened accounts in the names of fraudulent entities, used forged checks, and removed unreported amounts of cash from the bank in unmarked duffel bags. Id. at 1149. These allegations, the Court of Appeal concluded, fell short of establishing aiding and abetting liability because the allegations failed to establish the banks' actual knowledge of the primary wrongful conduct at the time of the misappropriation.

As in Casey, the conclusory allegations set forth in the TAC fail to allege that

BANA actually knew that Lahlou was engaged in a fraudulent scheme on June 4, 2013, when she removed Namer as an authorized signer on the banks accounts, and fail to adequately establish that BANA had actual knowledge of Lahlou's primary wrong: wrongfully removing Namer as an authorized signer on the accounts in order to fraudulently deplete the funds in the Corporate Accounts. The signature cards establish that Lahlou removed Namer as an authorized signer on June 4, 2013. The removal of an authorized signer on an account is a lawful, routine commercial transaction. While Plaintiffs allege that BANA followed the instructions of Lahlou in removing him from the accounts, such an allegation falls short of establishing that BANA knew on June 4, 2013, that Lahlou was engaged in a fraudulent scheme to drain the Corporate Plaintiffs' bank accounts.[2] Lahlou, as an authorized signer on the accounts, was authorized to remove co-signers on the accounts. The TAC alleges that it was not until September 9, 2013, that Namer informed BANA that LahLou was engaged in "a hostile and fraudulent takeover of the Corporate Plaintiffs." (TAC ¶52). This, and related allegations, are insufficient to establish BANA's actual contemporaneous knowledge of Lahlou's fraudulent scheme, and thus fail to state a cause of action for aiding and abetting conversion.

In sum, the court denies the motion for reconsideration and dismisses the aiding and abetting conversion claim with prejudice and without further leave of court. The Clerk of Court is instructed to close the file.

**IT IS SO ORDERED.**

DATED: October 2, 2017

Hon. Jeffrey T. Miller
United States District Judge

cc: All parties

---

[2] Upon learning of Lahlou's alleged fraud on June 6, 2013, the Corporate Plaintiffs, all entities allegedly controlled by Namer, fail to explain why corporate resolutions were not drafted to immediately remove Lahlou as an authorized signer on the accounts. Corporate Plaintiffs could have obtained the sought-after relief within hours, instead of pursing protracted litigation.